# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW JAMES GRIFFIN,<br><br>   Plaintiff,<br><br> v.<br><br>J. MOON, et al.,<br><br>   Defendants. | 1:12-cv-02034-LJO-BAM (PC)<br><br>SCREENING ORDER DISMISSING THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND GRANTING LEAVE TO AMEND<br>(ECF No. 51)<br><br>THIRTY-DAY DEADLINE |

**I.** **<u>Screening Requirement and Standard</u>**

Plaintiff Matthew James Griffin ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's third amended complaint, filed on June 16, 2014, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

1

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II.     Plaintiff's Allegations

Plaintiff is a prisoner of the State of New Mexico and is currently housed in Eloy, Arizona in a privately-operated correctional facility.  Plaintiff alleges that he was transferred to California under the Western Interstate Corrections Compact on August 10, 2008.  The events in the complaint are alleged to have occurred while Plaintiff was housed at California State Prison-Corcoran ("CSP-Cor").  Plaintiff names the following defendants:  (1) J. Moon, medical doctor, (2) Jeffrey Wang, Chief Medical Officer, (3) Edgar Clark, medical doctor; (4) Conall McCabe, medical doctor; (5) J. Neubarth, medical doctor; (6) P. Haines Ely, contract dermatologist; and (7) Josephine Bondoc, nurse practitioner.

On May 21, 2009, while housed at CCI-Tehachapi, Plaintiff was transferred to a new cell. His property, clothing and linen were transferred with him.  Plaintiff's new cell contained a mattress with a cloth covering, the outer plastic/vinyl cover having been removed.  Within two weeks of the move, Plaintiff contracted a parasitic organism, which began to break down the

2

integrity of Plaintiff's skin and caused him to develop painful and debilitating skin infections. During the next two months, CCI-Tehachapi medical staff took steps to remedy Plaintiff's condition, including replacing his mattress, clothing and linen. They also had an exterminator spray his cell with pesticide. When the pesticide had no effect, they prescribed Permethrin cream for Plaintiff, which was effective for three days and then failed.

On July 28, 2009, Plaintiff was transferred to CSP-Cor. He arrived with a skin infection, open wounds on his skin, scabbed over wounds and visible infections within the skin. On July 31, 2009, Plaintiff was diagnosed with scabies and Defendant Bondoc prescribed Permethrin. He also was given an Infectious Control Scabies Treatment Instruction Worksheet. Defendant Bondoc did not order or perform any diagnostic skin testing. The Permethrin worked for three days before failing.

Between August 2009 and October 2012, Plaintiff had all the symptoms and markers typically associated with Demodex or other parasitic mites, including movement on the surface of the skin, folliculitis, blepharitis (inflammation of eye lids), increased movement on the surface of the skin at night, infestation of the scalp, infections within the skin, eruptions of the skin and scabbing.

Defendant Bondoc failed to ensure that security staff carried out the step-by-step instructions on the Scabies Infectious Control Instruction Sheet after prescribing Permethrin Cream. Medical personnel and security did not complete a full clothing-and-linen exchange to accompany the provision of medication.

On August 18, 2009, Plaintiff was taken to the 4A-Clinic and placed in a metal cage. The cage was filthy, had trash on the floor, the Plexiglas and interior were caked with foreign matter and bodily foods. Plaintiff waited in the cage over an hour to see Defendant Bondoc. Plaintiff was taken to a dirty exam room. Plaintiff complained to Defendant Bondoc that the unsanitary conditions of the clinic coupled with his open wounds and infections created a serious risk to Plaintiff's health. At the time, Plaintiff had open wounds, infections and scabbing on his skin. Defendant Bondoc performed a cursory exam, did not require Plaintiff to disrobe and did not

accurately record Plaintiff's skin condition in his medical record. Defendant Bondoc failed to order any diagnostic testing of Plaintiff's skin and did not prescribe any medication.

On August 25, 2009, Plaintiff again saw Defendant Bondoc, who referred Plaintiff to ophthalmology, but not dermatology. Defendant Bondoc indicated that they did not have a dermatologist on staff and off-site referral cost money. Plaintiff's skin infection remained unresolved, he was given nothing for pain and Defendant Bondoc did not perform or order any diagnostic testing of Plaintiff's skin.

On September 15, 2009, Plaintiff was taken to the 4A-Clinic and placed in a standing cage that had a puddle of urine on the floor. At the time of his exam, Plaintiff had visible open wounds, secondary infections of the skin, folliculitis and scabbing on his buttocks, head and arms. Plaintiff complained about the unsanitary conditions and his worsening skin condition. He also sought an ADA Comprehensive Accommodation Chrono related to his diagnosed serious vision impairment. Plaintiff's medical appointment was cancelled by Defendant Bondoc for threatening conduct. Defendant Bondoc reported Plaintiff stating, "I will take you to Court and report you to the Nursing Board." Plaintiff's skin condition remained unresolved.

On October 2, 2009, Plaintiff was seen by Defendant Bondoc and Defendant McCabe. Plaintiff complained that he was in pain, which was disrupting his sleep, and the eruptions and infections were worsening. Defendants failed to accurately document Plaintiff's skin condition, did not have him disrobe during the exam, and refused to perform or order any diagnostic tests. At the time of his examination, Plaintiff had open wounds, folliculitis, secondary infections and scabbing on his head, buttocks, arms and legs.

On October 2, 2009, Plaintiff was admitted to the Acute Care Hospital at CSP-Cor and discharged the following day.

On October 9, 2009, a registered nurse completed a skin encounter form.

On October 10, 2009, Defendant Bondoc prescribed Hydrocortisone cream for Plaintiff's skin condition without performing any diagnostic testing. The cream had no effect on Plaintiff's skin condition.

On October 12, 2009, Plaintiff received a new diagnosis of inflammatory skin condition. He was scheduled to see a doctor for follow-up.

On December 3, 2009, Plaintiff was transported to the 4A-Clinic. Defendant McCabe performed a cursory examination of Plaintiff's skin and did not require Plaintiff to disrobe. At the time of the exam, Plaintiff had open wounds, skin infections, scabbing on his head, neck and arms, swollen eyelids, and other skin eruptions, infections and scabbing on his head, neck and arms. Defendant McCabe failed to fully document Plaintiff's skin condition and failed to perform or order any diagnostic skin testing. Defendant McCabe provided Hydrazine for itching and triple antibiotic ointment. Plaintiff was to check back in two months.

On December 18, 2009, Plaintiff was taken to the clinic to be seen by Defendant Neubarth. During the exam, Plaintiff had open wounds, skin eruptions, secondary skin infections, Folliculitis, swollen eyelids and signs of hyperpigmentation. Plaintiff told Defendant Neubarth that he had the infection for over six months and his sleep had been disrupted every night except for the brief use of Permethrin. Defendant Neubarth diagnosed Plaintiff's condition as chronic skin eruptions and wrote a prescription for Dakin's Solution. Defendant Neubarth failed to perform or order any diagnostic testing of Plaintiff's skin. The medication prescribed by Defendant Neubarth did not resolve Plaintiff's skin condition.

On January 11, 2010, Plaintiff was taken to the 4A-Clinic. Defendant Neubarth conducted a cursory exam. At the time, Plaintiff had open wounds, Folliculitis, secondary infections, swollen eyelids, scabbing on his head, back, buttocks, and legs, hyperpigmentation and soft tissue scarring. Defendant Neubarth did not perform or order any diagnostic testing and he refused to refer Plaintiff to a specialist. Defendant Neubarth continued Plaintiff's medications.

On February 11, 2010, Plaintiff was being examined by RN Holt, who asked Defendant Neubarth to look at Plaintiff's skin condition. Defendant Neubarth conducted a cursory examination. At the time, Plaintiff had open wounds, Folliculitis, secondary skin infections, scabbing, hyperpigmentation and soft tissue scarring. Defendant Neubarth refused to order

diagnostic skin testing or provide a referral to a specialist.  Defendant Neubarth reordered Dakin's Solution, which previously had failed to work.

On February 26, 2010, Plaintiff was examined by Doctor Sofinski, an ophthalmologist using magnification to examine Plaintiff's eye condition.  During the exam, Dr. Sofinski remarked, "You've got something on your scalp, you should get that checked."

On March 29, 2010, Plaintiff was transferred to the 3A yard at CSP-Cor.

On April 15, 2010, Plaintiff was taken to the 3A-03 clinic.  Plaintiff was given a cursory exam by Defendant Moon.  At the time, Plaintiff had open wounds, folliculitis, secondary infections, and scabbing.  Defendant Moon did not perform or order any diagnostic testing.  Defendant Moon prescribed antibiotic ointment and Hydrocortisone cream, which were previously used.

On May 20, 2010, Plaintiff had an appointment with Defendant Moon, who was angry about the number of 602 medical appeals filed by Plaintiff and his vision follow-up request after the reinstatement of his accommodation chrono.  Defendant Moon announced that Plaintiff's back medication was cancelled.  Defendant Moon refused to perform or order diagnostic skin testing and refused to refer Plaintiff to a specialist.

On May 27, 2010, Plaintiff had another appointment with Defendant Moon.  Defendant Moon prescribed the same antibiotic ointment.

On June 22, 2010, Plaintiff saw Defendant Moon at the 3A-03 Clinic.  Defendant Moon could not locate Plaintiff's medical records and provided no treatment.  Plaintiff was told his appointment would be rescheduled, but Defendant Moon failed to reschedule it.

On June 28, 2010, Plaintiff was admitted to the hospital at 2:00 a.m. and discharged back to the unit with assurances that his June 22 appointment would be rescheduled.

On June 29, 2010, Plaintiff saw Dr. Yu, who prescribed Permethrin cream.  However, Defendant Wang cancelled the medication and Plaintiff continued to suffer pain from his skin condition.

On June 29, 2010, two inmates stated they were prescribed Permethrin for scabies.  They had been in Plaintiff's prior unit.

On July 6, 2010, Plaintiff saw Dr. Wang, who did not perform a skin exam or diagnostic testing and did not order any diagnostic testing. Defendant Wang told Plaintiff to continue using hydrocortisone cream. Defendant Wang refused to refer Plaintiff to a specialist.

On July 6, 2010, the inmates told Plaintiff that the Permethrin had only worked for 2 days and Defendant Wang placed them on quarantine status. Defendant Wang knew he had a cluster of skin infections that were Permethrin resistant.

On July 30, 2010, Defendant Clark denied plaintiff's request for medication, treatment and to be seen by a specialist. Defendant Clark never examined plaintiff.

On August 4, 2010, a registered nurse examined and recorded Plaintiff's skin condition to include "skin lesions on his forehead, arms, chest, back and legs that appear to be tracking under the skin."

On August 17, 2010, Plaintiff saw Defendant Wang, who refused to order diagnostic skin testing or refer Plaintiff to a specialist. Defendant Wang prescribed hydrocortisone cream and selenium sulfide shampoo. At the time of the appointment, Plaintiff had open wounds, folliculitis, secondary infections and scabbing on his head, chest, back, arms, legs and buttocks. The medication did not resolve Plaintiff's skin condition.

On September 7, 2010, Plaintiff was admitted to the ACH Hospital at CSP-Cor. Plaintiff had developed the sensation of movement within his left ear canal, a painful earache and bloody puss draining from the left ear. Plaintiff was prescribed ear drops and discharged on September 8, 2010.

On September 9, 2010, Plaintiff was contacted by Dr. Minn, a psychiatrist. Dr. Minn informed plaintiff that Defendants Clark, Wang and Moon had reported that all diagnostic tests performed on Plaintiff were negative for parasites. Dr. Minn stated that he was diagnosing Plaintiff as having delusional parasitosis.

On September 23, 2010, Plaintiff saw Defendant Wang, who did not order any diagnostic testing and refused to refer Plaintiff to a specialist for examination and treatment. Defendant Wang continued the prescription for selenium sulfide.

1  On October 21, 2010, Plaintiff saw Defendant Wang. Plaintiff was required to undergo
2 an exam, naked and bent over, in plain view of occupied cells. Defendant Wang diagnosed
3 plaintiff with skin eruptions on his scalp, back, arms, buttocks and axillary folds, which he
4 recorded on a CDC 7230-M. Defendant Wang completed a referral to dermatology and
5 continued the prescription for selenium sulfide.
6  On November 19, 2010, Defendant Clark granted the referral to the dermatologist by
7 telemedicine.
8  On February 11, 2011, Plaintiff saw Defendant Ely by telemedicine exam. Defendant
9 Ely did not perform or order any diagnostic testing of Plaintiff's skin. Defendant Ely diagnosed
10 plaintiff as probably having chronic folliculitis and noted hyperpigmentation on Plaintiff's
11 buttocks. Defendant Ely recommended a follow-up visit in six weeks and prescribed antibiotic,
12 antifungal and steroid medications. The medications had little effect and Plaintiff's follow-up
13 visit was not rescheduled within six weeks.
14  On February 17, 2011, Plaintiff saw Defendant Wang, who said he would wait to act on
15 Defendant Ely's recommendations until receiving the report.
16  On March 24, 2011, Plaintiff transferred back to the 4A CSP-COR-SHU.
17  On April 29, 2011, Plaintiff saw Defendant Ely via telemedicine. Plaintiff's skin
18 condition had not improved. Defendant Ely modified Plaintiff's diagnoses to include both
19 folliculitis and delusional parasitosis. Defendant Ely did not perform a single diagnostic test.
20 Defendant Ely recommended the same medications, along with Permethrin cream and Pimozide,
21 a psychotropic medication. Defendant Ely reportedly wrote, "Delusions of Parasitosis can be
22 effectively treated with Pimozide. This is almost a diagnostic test. If the patient stops his
23 delusions after a few days of Pimozide, it is clearly the correct diagnosis." Defendant Ely
24 requested a six-week follow-up appointment.
25  Plaintiff was given another six-week course of medications, but Defendant Clark denied
26 the Pimozide as non-formulary. Plaintiff was given Permethrin for six weeks and his skin began
27 to clear. By week six, over 90% of Plaintiff's skin eruptions had healed, leaving Plaintiff's skin
28 with deep purple hyperpigmentation around the buttocks and upper backside of the legs. When

Plaintiff's prescriptions ended, his condition began to revert and he developed new skin eruptions.

On July 3, 2011, Plaintiff was admitted to ACH Hospital at CSP-Cor. At the time of his admission, Plaintiff had open wounds, folliculitis, skin eruptions and scabbing on his head, back, buttocks and upper legs. Defendants' false statements about diagnostic testing caused the prison psychiatrist to initiate *Keyhea* proceedings to involuntarily administer psychotropic medication to Plaintiff against his will. Plaintiff left the hospital on July 18, 2011.

On August 9, 2011, Plaintiff saw Defendant Bondoc, who described Plaintiff as another "crazy person" and prescribed selenium sulfide. Defendant Bondoc refused to schedule Plaintiff's follow-up with the dermatologist.

On August 17, 2011, Plaintiff appeared before an Administrative Law Judge on CDCR's petition for an order authorizing the involuntary administration of medication. The petition alleged, amongst other things, that plaintiff was a danger to himself, gravely disabled, there was no medical cause for his wounds and he suffered from a delusional disorder. A psychiatrist testified that Plaintiff's skin had been thoroughly tested and examined, but when confronted with the medical record and absence of any diagnostic testing, he recanted. The petition was denied on the merits.

On August 30, 2011, Plaintiff was examined by Nurse Martinez. During the exam, Nurse Martinez summoned Defendant Moon, who also examined Plaintiff. Defendant Moon provided no treatment for Plaintiff's open wounds, folliculitis and infections.

On September 16, 2011, Plaintiff saw Defendant Ely by telemedicine. Defendant Ely noted in his report obvious clinical lesions, recommended a follow-up in 90 days, and prescribed Permethrin cream.

On September 19, 2011, Defendant McCabe denied Plaintiff's written request for Permethrin.

On September 20, 2011, Plaintiff entered into a written Settlement Agreement with the State of New Mexico in which New Mexico agreed to pay for Plaintiff's diagnostic skin testing

9

and the cost of any medication.  All Defendants, except Ely, blocked implementation of the agreement.

On September 30, 2011, Plaintiff saw Defendant Bondoc, who refused to perform or order diagnostic testing.  Defendant Bondoc also refused to prescribe Permethrin and Pimozide and refused to schedule a 90-day follow-up with Defendant Ely.

On October 10, 2011, Defendant Wang denied Plaintiff's written request for Permethrin.

On November 28, 2011, Defendant Moon refused to prescribe Permethrin or Pimozide as recommended by Defendant Ely.

On January 11, 2012, Plaintiff saw Defendant Ely by telemedicine.  Defendant Ely disregarded the lesser indication on Plaintiff's head and back and focused on Plaintiff's legs and buttocks.  In a written report, Defendant Ely recommended a biopsy "in case we are missing something and he really does have an organic disease."  Defendant Ely also recommended Doxycycline, Ketoconazole, Pimozide and Permethrin, along with a follow-up appointment after the biopsy.

On January 12, 2012, Plaintiff saw Defendant Moon, who refused to prescribe any the medications recommended by Defendant Ely and refused to schedule a follow-up with Defendant Ely.

On February 13, 2012, Plaintiff was sent to Defendant Clark for a biopsy of his skin.  Defendant Clark refused to perform the biopsy, but wanted to send Plaintiff to the dermatologist for examination and testing.

On February 23, 2012, Plaintiff was informed the Defendant Wang had denied a referral to the dermatologist and a follow-up with Defendant Ely.

At follow-up appointments with Defendant Moon on March 12, 13 and 28, 2012, Defendant Moon continued to refuse to prescribe any of the medications recommended by Defendant Ely.  Defendant Moon reported that Defendant Wang had denied the Pimozide as non-formulary.

On March 13, 2012, Plaintiff had an appointment with Defendant Clark on an administrative appeal. Defendant Clark stated that he would reschedule Plaintiff's biopsy within a month.

On April 27, 2012, Plaintiff met with Defendant Clark, who told Plaintiff it was too late to act on the recommendation for a biopsy and that Plaintiff would have to start the process to see a specialist over again. Plaintiff filed an appeal seeking diagnostic testing based on the recommendation of the dermatologist and the settlement agreement with New Mexico. Defendant McCabe denied the appeal and request for biopsy on June 8, 2012. Defendant Wang denied the appeal and request for biopsy on July 31, 2012. The appeal was denied at the third level on October 29, 2012.

Plaintiff asserts the following causes of action: (1) professional negligence-malpractice by a medical doctor against Defendants Moon and Wang; (2) professional negligence-malpractice against Defendant Ely; (3) professional negligence-malpractice against Defendant Bondoc; (4) medical malpractice against Defendants Moon, Wang, Bondoc and Ely; (5) professional negligence-medical battery against Defendant Moon; (6) denial of medical care in violation of the Eighth Amendment against Defendants Moon, Wang, Clark, McCabe, Neubarth, Bondoc and Ely; (7) conspiracy to violate civil rights against Defendants Moon, Wang, Clark, McCabe, Neubarth, Bondoc and Ely; and (8) negligence-simple battery against Defendant Moon.

As relief, Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief.

### III. Discussion

#### A. Eighth Amendment – Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could

result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010). Deliberate indifference is a high legal standard. Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811(1994).

"Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990).

In his Eighth Amendment claim, Plaintiff alleges that from August 18, 2009 through January 10, 2012, Defendants Moon, Wang, Clark, McCabe, Neubarth, Bondoc and Ely deliberately disregarded Plaintiff's serious medical conditions by "not performing diagnostic testing," including a biopsy, skin scrapings, microscopic analysis, Underwood fluorescent light examination and dermoscopy. (ECF No. 51, ¶¶ 164-65, 167.) Plaintiff's allegations amount, at most, to medical malpractice or gross negligence, which does not support an Eighth Amendment claim. Broughton, 622 F.2d at 460; Estelle, 429 U.S. at 106. According to Plaintiff's allegations, Plaintiff's medical providers attempted to address his medical condition by prescribing medications, creams or other remedies nearly monthly from at least July 2009 through January 2012. Even assuming Defendants erred in their treatment methods, an Eighth

Amendment claim may not be premised on even gross negligence by a physician. Wood, 900 F.2d at 1334. Further, Plaintiff's complaints concerning the types of medication and testing that he should have received amount to a mere disagreement between an inmate and medical providers, which does not support a claim of deliberate indifference. Sanchez, 891 F.2d at 242.

Plaintiff also alleges that from February 2011 through April 27, 2012, Defendants Moon, Wang, Clark, McCabe and Bondoc failed to carry out the recommendations of a medical specialist in dermatology by denying prescriptions for Permethrin, Pimozide and diagnostic testing. (ECF No. 51, ¶ 170.) "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted). In this instance, Plaintiff has not demonstrated that the refusal to conduct a biopsy or order the medications prescribed by Defendant Ely in January 2012 was made in a conscious disregard of an excessive risk to Plaintiff's health. Instead, Plaintiff's allegations suggest that Defendant Ely recommended the biopsy and medications only on the off-chance that Defendant Ely and other physicians may have missed something.

**B. Conspiracy**

Plaintiff alleges that Defendant Moon, Wang, Clark, McCabe, Neubarth, Bondoc, and Ely conspired to deprive him of his constitutional rights.

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir.1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v.

Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir.1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Plaintiff fails to allege any plausible facts supporting the existence of a conspiracy between defendants. Plaintiff's conclusory statements that defendants had an explicit or tacit meeting of the minds and committed acts and omissions with the intent to deprive him of his constitutional rights are not sufficient.

### C. State Law Claims

#### 1. Medical Malpractice

Plaintiff has stated medical malpractice claims against Defendants Moon, Wang, Ely, and Bondoc. "The elements of a medical malpractice claim are (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Avivi v. Centro Medico Urgente Medical Center, 159 Cal.App.4th 463, 468, n. 2, 71 Cal.Rptr.3d 707 (Ct.App.2008) (internal quotations and citation omitted); Johnson v. Superior Court, 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (2006).

#### 2. Battery

Plaintiff has stated a battery claim against Defendant Moon. A battery claim requires a showing that (1) Defendant Moon intentionally did an act that resulted in harmful or offensive contact with Plaintiff's person, (2) Plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss, or harm to Plaintiff. Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007) (citation and quotations omitted).

### D. Declaratory Relief

"A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). "Declaratory relief

should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event this action proceeds to trial and a jury returns a verdict in favor of Plaintiff, the verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### E. Injunctive Relief

To the extent Plaintiff seeks injunctive relief regarding his medical care at CSP-Cor, this request is now moot. Plaintiff has been transferred to the Saguaro Correctional Center in Eloy, Arizona. A request for injunctive relief becomes moot if a prisoner is transferred. Andrews v. Cervantes, 493 F.3d 1047, 1053 n. 5 (9th Cir.2007) (citing Johnson v. Moore, 948 F.2d 517, 510 (9th Cir.1991) (per curiam). There is no indication that Plaintiff expects to be transferred back to CSP-Cor. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1996).

### F. Conclusion and Order

Although Plaintiff may have asserted cognizable state law claims, Plaintiff's complaint fails to state a cognizable section 1983 claim. However, the Court will provide Plaintiff with a final opportunity to amend his complaint and cure the identified deficiencies. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what the named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012) (en banc).  Therefore, Plaintiff's

amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's third amended complaint is dismissed for failure to state a claim upon which relief may be granted;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a fourth amended complaint; and
4. <u>If Plaintiff fails to file a fourth amended complaint in compliance with this order, this action will be dismissed with prejudice for failure to state a claim.</u>

IT IS SO ORDERED.

Dated:   **May 7, 2015**                              /s/ Barbara A. McAuliffe
                                                     UNITED STATES MAGISTRATE JUDGE