1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

7

8

9

10

11

12

13

14

15

16

| | |
|---|---|
| MATTHEW JAMES GRIFFIN,<br><br>               Plaintiff,<br><br>       v.<br><br>J. MOON, et al.,<br><br>               Defendants. | )  1:12-cv-02034-LJO-BAM (PC)<br>)<br>)  FINDINGS AND RECOMMENDATIONS<br>)  REGARDING DISMISSAL OF ACTION<br>)  FOR FAILURE TO STATE A CLAIM<br>)  (ECF No. 67)<br>)<br>)  FOURTEEN-DAY DEADLINE<br>)<br>)<br>)<br>)<br>) |

17

**I.      Screening Requirement and Standard**

18

19

20

Plaintiff Matthew James Griffin ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's fourth amended complaint, filed on June 18, 2015, is currently before the Court for screening.

21

22

23

24

25

26

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

27

28

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

1

1  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

2  conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937,

3  1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65

4  (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge

5  unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009)

6  (internal quotation marks and citation omitted).

7        Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

8  liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338,

9  342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially

10  plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each

11  named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949

12  (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir.

13  2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere

14  consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at

15  678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

16  **II.    Plaintiff's Allegations**

17        Plaintiff is a prisoner of the State of New Mexico and is currently housed at the

18  Alexander Correctional Institution in Taylorsville, North Carolina.  Plaintiff initiated this action

19  while housed at California State Prison-Corcoran ("CSP-Cor"), where the events in the

20  complaint are alleged to have occurred.

21        Plaintiff names the following defendants:  (1) Jong Yeoung Moon, CSP-Cor medical

22  doctor, (2) Jeffrey Jeng-Tao Wang, CSP-Cor Chief Medical Officer, (3) Edgar Harold Clark,

23  CSP-Cor medical doctor; (4) Conall Deaglan Eog McCabe, CSP-Cor medical doctor; (5) Jeffrey

24  Lee Neubarth, CSP-Cor medical doctor; (6) Parry Haines Ely, contract dermatologist; and (7)

25  Josephine Cayaban Bondoc, CSP-Cor nurse practitioner.

26        Plaintiff alleges:  On May 21, 2009, while housed at CCI-Tehachapi, Plaintiff was

27  transferred to a new cell.  His property, clothing and linen were transferred with him.  Plaintiff's

28  new cell contained a mattress with a cloth covering, the outer plastic/vinyl cover having been

1  removed.  Within two weeks of the move, Plaintiff contracted a parasitic organism, which began

2  to break down the integrity of Plaintiff's skin and caused him to develop painful and debilitating

3  skin infections.  During the next two months, CCI-Tehachapi medical staff took steps to remedy

4  Plaintiff's condition, including replacing his mattress, clothing and linen.  They also had an

5  exterminator spray his cell with pesticide.  When the pesticide had no effect, they prescribed

6  Permethrin cream for Plaintiff, which was effective for three days and then failed.

7  On July 28, 2009, Plaintiff was transferred to CSP-Cor.  He arrived with Folliculitis,

8  secondary skin infections, open wounds on his skin, scabbed over wounds and visible infections

9  within the skin.  On July 31, 2009, Plaintiff was diagnosed with scabies and Defendant Bondoc

10  prescribed Permethrin. Plaintiff also was given an Infectious Control Scabies Treatment

11  Instruction Worksheet and the Public Health Nurse was notified.  Defendant Bondoc did not

12  order or perform any diagnostic skin testing. The Permethrin worked for three days before

13  failing.

14  Between July 2009 and October 2012, Plaintiff had all the symptoms and markers

15  typically associated with Demodex or other parasitic mites, including movement on the surface

16  of the skin, folliculitis, blepharitis (inflammation of eye lids), increased movement on the surface

17  of the skin at night, infestation of the scalp, infections within the skin, eruptions of the skin and

18  scabbing.

19  Plaintiff alleges that Defendant Bondoc failed to ensure that security staff carried out the

20  step-by-step instructions on the Scabies Infectious Control Instruction Sheet after prescribing

21  Permethrin Cream on July 31, 2009.  Medical personnel and security did not complete a full

22  clothing-and-linen exchange to accompany the provision of medication.

23  On August 18, 2009, Plaintiff was taken to the 4A-Clinic and placed in a metal cage.  The

24  cage was filthy, had trash on the floor, the Plexiglas and interior were caked with foreign matter

25  and bodily foods.  Plaintiff waited in the cage over an hour to see Defendant Bondoc.  Plaintiff

26  was taken to a dirty exam room.  Plaintiff complained to Defendant Bondoc that the unsanitary

27  conditions of the clinic coupled with his open wounds and infections created a serious risk to

28  Plaintiff's health.  At the time, Plaintiff had open wounds, infections and scabbing on his skin.

3

1  Defendant Bondoc performed a cursory exam, did not require Plaintiff to disrobe and did not

2  accurately record Plaintiff's skin condition in his medical record.  Defendant Bondoc failed to

3  order any diagnostic testing of Plaintiff's skin and did not prescribe any medication.

4  On August 25, 2009, Plaintiff again saw Defendant Bondoc, who referred Plaintiff to

5  ophthalmology, but not dermatology.  Defendant Bondoc indicated that they did not have a

6  dermatologist on staff and off-site referral cost money.  Plaintiff's skin infection remained

7  unresolved, he was given nothing for pain and Defendant Bondoc did not perform or order any

8  diagnostic testing of Plaintiff's skin.

9  On September 15, 2009, Plaintiff was taken to the 4A-Clinic and placed in a standing

10 cage that had a puddle of urine on the floor.  At the time of his exam, Plaintiff had visible open

11 wounds, secondary infections of the skin, folliculitis and scabbing on his buttocks, head and

12 arms.  Plaintiff complained about the unsanitary conditions and his worsening skin condition.

13 He also sought an ADA Comprehensive Accommodation Chrono related to his diagnosed

14 serious vision impairment.  Plaintiff's medical appointment was cancelled by Defendant Bondoc

15 for threatening conduct.  Defendant Bondoc reported Plaintiff stating, "I will take you to Court

16 and report you to the Nursing Board."  Plaintiff's skin condition remained unresolved.

17 On October 2, 2009, Plaintiff was seen by Defendant Bondoc and Defendant McCabe.

18 Plaintiff complained that he was in pain, which was disrupting his sleep, and the eruptions and

19 infections were worsening.  Defendants failed to accurately document Plaintiff's skin condition,

20 did not have him disrobe during the exam, and refused to perform or order any diagnostic tests.

21 At the time of his examination, Plaintiff had open wounds, folliculitis, secondary infections and

22 scabbing on his head, buttocks, arms and legs.

23 On October 2, 2009, Plaintiff was admitted to the Acute Care Hospital at CSP-Cor and

24 discharged the following day.

25 On October 9, 2009, a registered nurse completed a skin encounter form.

26 On October 10, 2009, Defendant Bondoc prescribed Hydrocortisone cream for Plaintiff's

27 skin condition without performing any diagnostic testing.  The cream had no effect on Plaintiff's

28 skin condition.

1    On October 12, 2009, Plaintiff received a new diagnosis of inflammatory skin condition.

2  He was scheduled to see a doctor for follow-up.

3    On December 3, 2009, Plaintiff was transported to the 4A-Clinic.  Defendant McCabe

4  performed a cursory examination of Plaintiff's skin and did not require Plaintiff to disrobe.  At

5  the time of the exam, Plaintiff had open wounds, skin infections, scabbing on his head, neck and

6  arms, swollen eyelids, and other skin eruptions, infections and scabbing on his head, neck and

7  arms.  Defendant McCabe failed to fully document Plaintiff's skin condition and failed to

8  perform or order any diagnostic skin testing.  Defendant McCabe provided Hydrazine for itching

9  and triple antibiotic ointment.  Plaintiff was to check back in two months.

10    On December 18, 2009, Plaintiff was taken to the clinic to be seen by Defendant

11  Neubarth.  During the exam, Plaintiff had open wounds, skin eruptions, secondary skin

12  infections, Folliculitis, swollen eyelids and signs of hyperpigmentation.  Plaintiff told Defendant

13  Neubarth that he had the infection for over six months and his sleep had been disrupted every

14  night except for the brief use of Permethrin.  Defendant Neubarth diagnosed Plaintiff's condition

15  as chronic skin eruptions and wrote a prescription for Dakin's Solution.  Defendant Neubarth

16  failed to perform or order any diagnostic testing of Plaintiff's skin.  The medication prescribed

17  by Defendant Neubarth did not resolve Plaintiff's skin condition.

18    On January 11, 2010, Plaintiff was taken to the 4A-Clinic.  Defendant Neubarth

19  conducted a cursory exam.  At the time, Plaintiff had open wounds, Folliculitis, secondary

20  infections, swollen eyelids, scabbing on his head, back, buttocks, and legs, hyperpigmentation

21  and soft tissue scarring.  Defendant Neubarth did not perform or order any diagnostic testing and

22  he refused to refer Plaintiff to a specialist.  Defendant Neubarth continued Plaintiff's

23  medications.

24    On February 11, 2010, Plaintiff was being examined by RN Holt, who asked Defendant

25  Neubarth to look at Plaintiff's skin condition.  Defendant Neubarth conducted a cursory

26  examination.  At the time, Plaintiff had open wounds, Folliculitis, secondary skin infections,

27  scabbing, hyperpigmentation and soft tissue scarring.  Defendant Neubarth refused to order

28

1 diagnostic skin testing or provide a referral to a specialist. Defendant Neubarth reordered

2 Dakin's Solution, which previously had failed to work.

3    On February 26, 2010, Plaintiff was examined by Doctor Sofinski, an ophthalmologist

4 using magnification to examine Plaintiff's eye condition. During the exam, Dr. Sofinski

5 remarked, "You've got something on your scalp, you should get that checked."

6    On March 29, 2010, Plaintiff was transferred to the 3A yard at CSP-Cor.

7    On April 15, 2010, Plaintiff was taken to the 3A-03 clinic. Plaintiff was given a cursory

8 exam by Defendant Moon. At the time, Plaintiff had open wounds, folliculitis, secondary

9 infections, and scabbing. Defendant Moon did not perform or order any diagnostic testing.

10 Defendant Moon prescribed antibiotic ointment and Hydrocortisone cream, which were

11 previously used.

12    On May 20, 2010, Plaintiff had an appointment with Defendant Moon, who was angry

13 about the number of 602 medical appeals filed by Plaintiff and Plaintiff's vision follow-up

14 request after the reinstatement of his accommodation chrono. Defendant Moon announced that

15 Plaintiff's back medication was cancelled. Defendant Moon refused to perform or order

16 diagnostic skin testing and refused to refer Plaintiff to a specialist.

17    On May 27, 2010, Plaintiff had another appointment with Defendant Moon. Defendant

18 Moon prescribed the same antibiotic ointment.

19    On June 22, 2010, Plaintiff saw Defendant Moon at the 3A-03 Clinic. Defendant Moon

20 could not locate Plaintiff's medical records and provided no treatment. Plaintiff was told his

21 appointment would be rescheduled, but Defendant Moon failed to reschedule it.

22    On June 28, 2010, Plaintiff was admitted to the hospital at 2:00 a.m. and discharged back

23 to the unit with assurances that his June 22 appointment would be rescheduled.

24    On June 29, 2010, Plaintiff saw Dr. Yu, who prescribed Permethrin cream. However,

25 Defendant Wang cancelled the medication and Plaintiff continued to suffer pain from his skin

26 condition.

27    On June 29, 2010, two inmates stated they were prescribed Permethrin for scabies. They

28 had been in Plaintiff's prior unit.

1    On July 6, 2010, Plaintiff saw Dr. Wang, who did not perform a skin exam or diagnostic

2    testing and did not order any diagnostic testing.  Defendant Wang told Plaintiff to continue using

3    hydrocortisone cream.  Defendant Wang refused to refer Plaintiff to a specialist.

4    On July 6, 2010, the inmates told Plaintiff that the Permethrin had only worked for 2 days

5    and Defendant Wang placed them on quarantine status.  Defendant Wang knew he had a cluster

6    of skin infections that were Permethrin resistant.

7    On July 30, 2010, Defendant Clark denied Plaintiff's request for medication, treatment

8    and to be seen by a specialist.  Defendant Clark never examined Plaintiff.

9    On August 4, 2010, a registered nurse examined and recorded Plaintiff's skin condition to

10   include "skin lesions on his forehead, arms, chest, back and legs that appear to be tracking under

11   the skin."

12   On August 17, 2010, Plaintiff saw Defendant Wang, who refused to order diagnostic skin

13   testing or refer Plaintiff to a specialist.  Defendant Wang prescribed hydrocortisone cream and

14   selenium sulfide shampoo.   At the time of the appointment, Plaintiff had open wounds,

15   folliculitis, secondary infections and scabbing on his head, chest, back, arms, legs and buttocks.

16   The medication did not resolve Plaintiff's skin condition.

17   On September 7, 2010, Plaintiff was admitted to the ACH Hospital at CSP-Cor.  Plaintiff

18   had developed the sensation of movement within his left ear canal, a painful earache and bloody

19   puss draining from the left ear.  Plaintiff was prescribed ear drops and discharged on September

20   8, 2010.

21   On September 9, 2010, Plaintiff was contacted by Dr. Minn, a psychiatrist.  Dr. Minn

22   informed Plaintiff that Defendants Clark, Wang and Moon had reported that all diagnostic tests

23   performed on Plaintiff were negative for parasites.  Dr. Minn stated that he was diagnosing

24   Plaintiff as having delusional parasitosis.

25   On September 23, 2010, Plaintiff saw Defendant Wang, who did not order any diagnostic

26   testing and refused to refer Plaintiff to a specialist for examination and treatment.  Defendant

27   Wang continued the prescription for selenium sulfide.

28

1      On October 21, 2010, Plaintiff saw Defendant Wang.  Plaintiff was required to undergo

2  an exam, naked and bent over, in plain view of occupied cells.  Defendant Wang diagnosed

3  plaintiff with skin eruptions on his scalp, back, arms, buttocks and axillary folds, which he

4  recorded on a CDC 7230-M.  Defendant Wang completed a referral to dermatology and

5  continued the prescription for selenium sulfide.

6      On November 19, 2010, Defendant Clark granted the referral to the dermatologist by

7  telemedicine.

8      On February 11, 2011, Plaintiff saw Defendant Ely by telemedicine exam.  Defendant

9  Ely did not perform or order any diagnostic testing of Plaintiff's skin.  Defendant Ely diagnosed

10 Plaintiff as probably having chronic folliculitis rather than delusional parasitosis.  Defendant Ely

11 recommended a follow-up visit in six weeks and prescribed antibiotic, antifungal and steroid

12 medications.  The medications had little effect and Plaintiff's follow-up visit was not rescheduled

13 within six weeks.

14     On February 17, 2011, Plaintiff saw Defendant Wang, who said he would wait to act on

15 Defendant Ely's recommendations until receiving the report.

16     On March 24, 2011, Plaintiff transferred back to the 4A CSP-COR-SHU.

17     On April 29, 2011, Plaintiff saw Defendant Ely via telemedicine.  Plaintiff's skin

18 condition had not improved.  Defendant Ely modified Plaintiff's diagnoses to include both

19 folliculitis and delusional parasitosis.  Defendant Ely did not perform a single diagnostic test.

20 Defendant Ely recommended the same medications, along with Permethrin cream and Pimozide,

21 a psychotropic medication.  Defendant Ely reportedly wrote, "Delusions of Parasitosis can be

22 effectively treated with Pimozide.  This is almost a diagnostic test.  If the patient stops his

23 delusions after a few days of Pimozide, it is clearly the correct diagnosis."  Defendant Ely

24 requested a six-week follow-up appointment.

25     Plaintiff was given another six-week course of medications, but Defendant Clark denied

26 the Pimozide as non-formulary.  Plaintiff was given Permethrin for six weeks and his skin began

27 to clear.  By week six, over 90% of Plaintiff's skin eruptions had healed, leaving Plaintiff's skin

28 with deep purple hyperpigmentation around the buttocks and upper backside of the legs.  When

1    Plaintiff's prescriptions ended, his condition began to revert and he developed new skin
2    eruptions.
3         On July 3, 2011, Plaintiff was admitted to ACH Hospital at CSP-Cor.  At the time of his
4    admission, Plaintiff had open wounds, folliculitis, skin eruptions and scabbing on his head, back,
5    buttocks and upper legs.  Defendants' false statements about diagnostic testing caused the prison
6    psychiatrist to initiate *Keyhea* proceedings to involuntarily administer psychotropic medication
7    to Plaintiff against his will.  Plaintiff left the hospital on July 18, 2011.
8         On August 9, 2011, Plaintiff saw Defendant Bondoc, who described Plaintiff as another
9    "crazy person" and prescribed selenium sulfide.   Defendant Bondoc refused to schedule
10   Plaintiff's follow-up with the dermatologist.
11        On August 17, 2011, Plaintiff appeared before an Administrative Law Judge on CDCR's
12   petition for an order authorizing the involuntary administration of medication.  The petition
13   alleged, amongst other things, that Plaintiff was a danger to himself, gravely disabled, there was
14   no medical cause for his wounds and he suffered from a delusional disorder.  A psychiatrist
15   testified that Plaintiff's skin had been thoroughly tested and examined, but when confronted with
16   the medical record and absence of any diagnostic testing, he recanted.  The petition was denied
17   on the merits.
18        On August 30, 2011, Plaintiff was examined by Nurse Martinez.  During the exam, Nurse
19   Martinez summoned Defendant Moon, who also examined Plaintiff.  Defendant Moon provided
20   no treatment for Plaintiff's open wounds, folliculitis and infections.
21        On September 16, 2011, Plaintiff saw Defendant Ely by telemedicine.  Defendant Ely
22   noted in his report obvious clinical lesions, recommended a follow-up in 90 days, and prescribed
23   Permethrin cream.
24        On September 19, 2011, Defendant McCabe denied Plaintiff's written request for
25   Permethrin.
26        On September 20, 2011, Plaintiff entered into a written Settlement Agreement with the
27   State of New Mexico in which New Mexico agreed to pay for Plaintiff's diagnostic skin testing
28

and the cost of any medication.  All Defendants, except Ely, blocked implementation of the agreement.

On September 30, 2011, Plaintiff saw Defendant Bondoc, who refused to perform or order diagnostic testing.  Defendant Bondoc also refused to prescribe Permethrin and Pimozide and refused to schedule a 90-day follow-up with Defendant Ely.

On October 10, 2011, Defendant Wang denied Plaintiff's written request for Permethrin.

On November 28, 2011, Defendant Moon refused to prescribe Permethrin or Pimozide as recommended by Defendant Ely.

On January 11, 2012, Plaintiff saw Defendant Ely by telemedicine.  Defendant Ely disregarded the lesser indication on Plaintiff's head and back and focused on Plaintiff's legs and buttocks.  In a written report, Defendant Ely recommended a biopsy "in case we are missing something and he really does have an organic disease."  Defendant Ely also recommended Doxycycline, Ketoconazole, Pimozide and Permethrin, along with a follow-up appointment after the biopsy.

On January 12, 2012, Plaintiff saw Defendant Moon, who refused to prescribe any the medications recommended by Defendant Ely and refused to schedule a follow-up with Defendant Ely.

On February 13, 2012, Plaintiff was sent to Defendant Clark for a biopsy of his skin. Defendant Clark refused to perform the biopsy, but wanted to send Plaintiff to the dermatologist for examination and testing.

On February 23, 2012, Plaintiff was informed the Defendant Wang had denied a referral to the dermatologist and a follow-up with Defendant Ely.

At follow-up appointments with Defendant Moon on March 12, 13 and 28, 2012, Defendant Moon continued to refuse to prescribe any of the medications recommended by Defendant Ely.  Defendant Moon reported that Defendant Wang had denied the Pimozide as non-formulary.

On March 13, 2012, Plaintiff had an appointment with Defendant Clark on an administrative appeal.  Defendant Clark stated that he would reschedule Plaintiff's biopsy within a month.

On April 27, 2012, Plaintiff met with Defendant Clark, who told Plaintiff it was too late to act on the recommendation for a biopsy and that Plaintiff would have to start the process to see a specialist over again.  Plaintiff filed an appeal seeking diagnostic testing based on the recommendation of the dermatologist and the settlement agreement with New Mexico. Defendant McCabe denied the appeal and request for biopsy on June 8, 2012.  Defendant Wang denied the appeal and request for biopsy on July 31, 2012.  The appeal was denied at the third level on October 29, 2012.

Plaintiff asserts the following causes of action:  (1) professional negligence-malpractice by a medical doctor against Defendants Moon and Wang; (2) professional negligence-malpractice against Defendant Ely; (3) professional negligence-malpractice against Defendant Bondoc; (4) medical malpractice against Defendants Moon, Wang, Bondoc and Ely; (5) professional negligence-medical battery against Defendant Moon; (6) denial of medical care in violation of the Eighth Amendment against Defendants Moon, Wang, Clark, McCabe, Neubarth, Bondoc and Ely; (7) conspiracy to violate civil rights against Defendants Moon, Wang, Clark, McCabe, Neubarth, Bondoc and Ely; and (8) negligence-simple battery against Defendant Moon.

As relief, Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief.

**III.    Discussion**

Plaintiff's fourth amended complaint merely reiterates the factual allegations and claims in his third amended complaint, which this Court dismissed, with leave to amend, for failure to state a cognizable section 1983 claim.  Having screened Plaintiff's fourth amended complaint and for the reasons that follow, the Court recommends that this action be dismissed for failure to state a cognizable section 1983 claim.

///

///

**A. Eighth Amendment – Deliberate Indifference**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010).  Deliberate indifference is a high legal standard.  Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference.  Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811(1994).

"Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990).

In his Eighth Amendment claim, Plaintiff alleges that from August 18, 2009 through April 27, 2012, Defendants Moon, Wang, Clark, McCabe, Neubarth, Bondoc and Ely deliberately disregarded "the underlying organic cause of Plaintiff's obvious skin infections, eruptions and pain."  (ECF No. 67, ¶ 161.)  Plaintiff also alleges that from August 19, 2009

1   through January 10, 2012, Defendants Moon, Wang, Clark, McCabe, Neubarth, Bondoc and Ely

2   deliberately disregarded Plaintiff's serious medical conditions by "failing to order, preform or

3   recommend diagnostic laboratory testing of Plaintiff's skin condition," including "biopsy, skin

4   scrapings, microscopic analysis, microscopic fluorescent light examination and dermoscopy,"

5   which did not allow for proper diagnosis or treatment.  (ECF No. 67, ¶¶ 164, 165, 167.)

6          Plaintiff's allegations amount, at most, to medical malpractice or gross negligence, which

7   does not support an Eighth Amendment claim.  Broughton, 622 F.2d at 460; Estelle, 429 U.S. at

8   106.  According to Plaintiff's allegations, Plaintiff's medical providers attempted to address his

9   medical condition by prescribing medications, creams or other remedies nearly monthly from at

10  least July 2009 through January 2012.  Even assuming Defendants erred in their treatment

11  methods, an Eighth Amendment claim may not be premised on a negligent diagnosis or

12  treatment or even on gross negligence by a physician.  Estelle, 429 U.S. at 106; Wood, 900 F.2d

13  at 1334.  Further, Plaintiff's complaints concerning the types of medication and testing that he

14  should have received amount to a mere disagreement between an inmate and medical providers,

15  which does not support a claim of deliberate indifference.  Sanchez, 891 F.2d at 242.

16         Plaintiff also alleges that from February 2011 through April 27, 2012, Defendants Moon,

17  Wang, Clark, McCabe and Bondoc failed to carry out the recommendations of a medical

18  specialist in dermatology by denying prescriptions for Permethrin, Pimozide and diagnostic

19  testing.  (ECF No. 51, ¶ 170.)  "A difference of opinion between a physician and the prisoner - or

20  between medical professionals - concerning what medical care is appropriate does not amount to

21  deliberate indifference."  Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez,

22  891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744

23  F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012)

24  (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that

25  the course of treatment the doctors chose was medically unacceptable under the circumstances

26  and that the defendants chose this course in conscious disregard of an excessive risk to [his]

27  health."  Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks

28  omitted).  In this instance, Plaintiff has not demonstrated that the refusal to conduct a biopsy or

1   order the medications prescribed by Defendant Ely in January 2012 was made in a conscious

2   disregard of an excessive risk to Plaintiff's health.  Instead, Plaintiff's allegations suggest that

3   Defendant Ely recommended the biopsy and medications only on the off-chance that he and

4   other physicians may have missed something in their diagnoses and treatment.  As discussed, a

5   negligent diagnosis or treatment of a medical condition does not amount to an Eighth

6   Amendment violation.  Estelle, 429 U.S. at 106.

7       **B.  Conspiracy**

8       Plaintiff alleges that Defendant Moon, Wang, Clark, McCabe, Neubarth, Bondoc, and

9   Ely conspired to deprive him of his constitutional rights.

10      A conspiracy claim brought under section 1983 requires proof of "'an agreement or

11  meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th

12  Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–

13  41 (9th Cir.1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v.

14  Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma,

15  866 F.2d 1121, 1126 (9th Cir.1989)).  "'To be liable, each participant in the conspiracy need not

16  know the exact details of the plan, but each participant must at least share the common objective

17  of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

18      Plaintiff fails to allege any plausible facts supporting the existence of a conspiracy

19  between defendants.  Plaintiff alleges that in further of the conspiracy, two or more of the

20  Defendants declared Plaintiff delusional, prosecuted a petition to have him involuntarily

21  medicated and failed to record the condition of his skin in the medical record and prevented him

22  from receiving diagnostic skin testing.  However, that any Defendants believed Plaintiff to be

23  delusional and in need of psychotropic medication does not in any way establish a conspiracy to

24  deprive him of treatment.  Plaintiff's conclusory statements that defendants had an explicit or

25  tacit meeting of the minds and committed acts and omissions with the intent to deprive him of

26  his constitutional rights are not sufficient.  (ECF No. 67, ¶ 179.)

27  ///

28  ///

14

1

### C.  <u>State Law Claims</u>

2       As Plaintiff has failed to state any cognizable federal claims in this action, the Court finds

3 it unnecessary to screen Plaintiff's state law claims. The Court generally declines to exercise

4 supplemental jurisdiction over state law claims in the absence of viable federal claims and this

5 case presents no exception. 28 U.S.C. § 1367(c)(3); <u>Parra v. PacifiCare of Ariz., Inc.</u>, 715 F.3d

6 1146, 1156 (9th Cir. 2013); <u>Herman Family Revocable Trust v. Teddy Bear</u>, 254 F.3d 802, 805

7 (9th Cir. 2001); <u>see also</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1117 (9th Cir. 2012) (if court

8 declines to exercise supplemental jurisdiction over state law claims once court dismissed federal

9 claims, then the court should dismiss the state law claims without prejudice). Therefore, it shall

10 be recommended that Plaintiff's state law claims be dismissed without prejudice. 28 U.S.C. §

11 1367(c)(3); <u>Parra</u>, 715 F.3d at 1156.

12       To the extent Plaintiff has been attempting to invoke this Court's diversity jurisdiction in

13 his Third and Fourth Amended complaints, he may not do so.  Diversity jurisdiction is

14 determined both at the time the complaint was filed and at the time the removal petition was

15 filed.  See <u>Jung v. Provident Life and Acc. Ins. Co.</u>, 2008 WL 4002374, at *1 (C.D. Cal. Aug.

16 27, 2008) (citations omitted); <u>see also</u> <u>Mann v. City of Tucson, Dep't of Police</u>, 782 F.2d 790,

17 794 (9th Cir. 1986) ("Existence of diversity jurisdiction is determined by the citizenship of the

18 parties at the time of the filing of the complaint, not at the time the cause of action arose or after

19 the action is commenced.").

20       Defendants removed the action to this Court based on original jurisdiction pursuant to 28

21 U.S.C. §1331 while Plaintiff was incarcerated at CSP-Cor.  At the time this action was filed in

22 Kings County Superior Court, Plaintiff was a prisoner at CSP-Cor and affirmatively alleged that

23 he was a resident of Kings County, California. (ECF No. 2-1.)  While a natural person's state

24 citizenship for purposes of diversity jurisdiction is determined by his state of domicile and not

25 his state of residence, <u>Kanter v. Warner–Lambert Co.</u>, 265 F.3d 853, 857 (9th Cir. 2001),

26 Plaintiff included no allegations that he previously was a resident of, or maintained his domicile

27 in, any other State. "The essential elements of diversity jurisdiction, including the diverse

28 residence of all parties, must be affirmatively alleged in the pleadings." <u>Bautista v. Pan</u>

American World Airlines, Inc., 828 F.2d 546, 552 (9th Cir. 1987) (citation omitted). Furthermore, despite alleging that he was domiciled in New Mexico, Plaintiff affirmatively invoked this Court's federal question jurisdiction in his first amended complaint following removal. (ECF No. 14, ¶ 2.)

### IV.  Conclusion and Order

Plaintiff's complaint fails to state a cognizable section 1983 claim upon which relief may be granted. Although Plaintiff has been provided with the relevant legal standards applicable to his federal claims, he has been unable to cure the deficiencies by amendment. Therefore, further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). Further, Plaintiff's state law claims should be dismissed without prejudice. 28 U.S.C. § 1367(c)(3).

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action be dismissed as to Plaintiff's federal claims, with prejudice, for failure to state a cognizable claim under section 1983; and

2. Plaintiff's state law claims be dismissed, without prejudice, for lack of jurisdiction.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 28, 2016**           /s/ _Barbara A. McAuliffe_
                                        UNITED STATES MAGISTRATE JUDGE